IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TYRONE OWENS, #B09385,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 14-01421-MJR |
| ) | |
| **DR. JOHN COE,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Tyrone Owens, who is incarcerated at Pinckneyville Correctional Center, filed a first amended complaint (Doc. 22) that is currently before the Court for review. Also before the Court is Plaintiff's motion for a temporary restraining order and/or preliminary injunction ("TRO Motion") (Doc. 25). Both are addressed herein.

The first amended complaint (Doc. 22) represents the third complaint that Plaintiff has filed in this action. The original complaint (Doc. 1) was filed without a signature on December 29, 2014 (Doc. 1). The second complaint (Doc. 12) was filed as an incomplete document on January 27, 2015, along with Plaintiff's request for additional time to submit a complete pleading. Document 22 followed on February 17, 2015. It is now subject to preliminary review under 28 U.S.C. § 1915A.

Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

As explained in more detail below, the first amended complaint presents many problems. It violates the pleading requirements set forth in the Federal Rules of Civil Procedure and clearly runs afoul of *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). Plaintiff's TRO Motion contains many of the same problems. Therefore, with one exception, Plaintiff's claims in the first amended complaint shall be dismissed without prejudice.

What shall remain in this action are those claims involving Defendants Eber and Hellmann (Counts 13 and 16). Although buried in the pleading, Count 16 presents what appears to be the most pressing issue, as it arises from allegations that Defendants Hellmann and Eber recently called Plaintiff a "snitch" in order to endanger his safety. Count 13 involves a related claim that Defendant Eber used threats and intimidation to prevent Plaintiff from talking with his wing officer. The Court will exercise its inherent authority to manage its cases by allowing Plaintiff to proceed with Counts 13 and 16 against Defendants Eber and Hellmann in this action. Further, Plaintiff's request for a preliminary injunction in Document 25 shall be referred to a United States Magistrate Judge for further consideration, but only as it relates to Counts 13 and 16. Finally, Warden Spiller shall remain in this action, in his official capacity only, based on Plaintiff's request for injunctive relief.

## First Amended Complaint

The first amended complaint spans eighty-one pages (Doc. 22). Most of the substantive allegations are set forth in the first forty-three pages of the pleading. There, Plaintiff names twenty-two or more defendants, including officials at the Illinois Department of Corrections ("IDOC"), Lawrence Correctional Center ("Lawrence"), and Pinckneyville Correctional Center ("Pinckneyville"), among others.[1]

---

[1] He also names Lawrence Correctional Center, Pinckneyville Correctional Center, Wexford Medical Services, and Cantini Food Services as defendants.

Plaintiff organizes the "statement of claim" into nineteen separate "counts." Each count addresses a distinct incident that gives rise to numerous constitutional and/or statutory claims against different defendants. These incidents occurred at two different institutions, including Lawrence and Pinckneyville.[2] Plaintiff describes each incident in narrative form. Below is a summary of each count:

Count 1: Defendant Berry violated Plaintiff's rights under the Americans with Disabilities Act ("ADA") and the Eighth Amendment by denying Plaintiff's request for assistance in Lawrence's ADA gym and responding to Plaintiff's complaints about a broken hand by threatening to overturn his wheelchair on December 13, 2013 (Doc. 22, pp. 9-11);

Count 2: Defendant Stout conspired with Defendant Berry to retaliate against Plaintiff for filing grievances by issuing him a false disciplinary ticket and canceling his pass to Lawrence's health care unit on December 15, 2013, in violation of the First, Eighth, and Fourteenth Amendments (Doc. 22, pp. 11-12);

Count 3: Defendant Coe failed to properly treat Plaintiff's fractured hand on December 13, 2013, in violation of the Eighth Amendment, Fourteenth Amendment, and Illinois law (Doc. 22, pp. 12-13);

Count 4: Defendant Coe misdiagnosed Plaintiff, by phone, with Type I diabetes on September 21, 2014, and subjected him to insulin shots twice each day despite Plaintiff's complaints of negative side effects, in violation of the Eighth Amendment and Illinois law (Doc. 22, pp. 13-14);

Count 5: Defendants Berry and Ray conspired to retaliate against Plaintiff by ignoring his complaints of an attack by a cellmate on December 24, 2013, and by thwarting his subsequent efforts to obtain medical care for his visible head injuries, in violation of the Eighth Amendment (Doc. 22, pp. 14-16);

Count 6: Defendant Horton conspired to retaliate against Plaintiff for filing "too many grievances and law-suits (sic)" by refusing to process his request for a transfer to Dixon or Big Muddy Correctional Center and related grievances on September 25, 2014, and instead recommending a transfer to a "disciplinary" prison, in violation of

---

[2] According to the first amended complaint, Plaintiff was housed at Lawrence from July 22, 2013 – September 25, 2014. He has been housed at Pinckneyville ever since.

|  |  |
|---|---|
| | the First, Eighth, and Fourteenth Amendments (Doc. 22, pp. 16-17); |
| **Count 7:** | Defendant Shah delayed proper diagnosis and treatment of Plaintiff's Type II diabetes after he arrived at Pinckneyville, and Defendant Hartman ignored Plaintiff's grievances regarding the same, in violation of the Eighth Amendment, Fourteenth Amendment, and Illinois law (Doc. 22, pp. 17-19); |
| **Count 8:** | Defendant Schidler retaliated against Plaintiff for filing grievances against him in December 2013, by threatening to flip Plaintiff out of his wheelchair, denying him access to an ADA restroom, and calling him a "cripple," in violation of the First, Eighth, and Fourteenth Amendments (Doc. 22, p. 19); |
| **Count 9:** | When Plaintiff complained at Pinckneyville about being placed in a cell with a rival gang member who had murdered his favorite cousin, Defendant Hartman ignored his grievances, and Defendant King told Plaintiff to "deal with it" before twisting Plaintiff's arms behind his back when he refused to return to his cell, in violation of Plaintiff's rights under the First, Eighth, and Fourteenth Amendments (Doc. 22, pp. 20-22); |
| **Count 10:** | Defendants IDOC, Spiller, and Godinez are aware that Lawrence and Pinckneyville's facilities are not wheelchair accessible and have caused Plaintiff to sustain multiple injuries, in violation of the Rehabilitation Act, ADA, Eighth Amendment, and Fourteenth Amendment (Doc. 22, pp. 22-25); |
| **Count 11:** | Defendants IDOC, Bates, Spiller, Godinez, and Pinckneyville violated Plaintiff's rights under the ADA, Eighth Amendment, and Fourteenth Amendment by housing four inmates in a one-man cell (two of whom are in wheelchairs) since October 4, 2014 (Doc. 22, pp. 25-26); |
| **Count 12:** | Defendants Bailey, Brittany, and Doe violated Plaintiff's rights under the Eighth and Fourteenth Amendments when they responded to his complaints of low blood sugar with deliberate indifference on December 16, 2014 (Doc. 22, pp. 26-28); |
| **Count 13:** | Defendant Eber prevented Plaintiff from speaking with his assigned wing officer on December 26, 2014, by yelling loudly at Plaintiff in a disrespectful and threatening manner, in violation of the First and Eighth Amendments (Doc. 22, pp. 28-29); |

**Count 14:**   Defendants IDOC, Bates, Bailey, Spiller, Godinez, and Pinckneyville conspired to institute a policy of denying inmates breakfast and instead forcing them to choose between waiting eighteen hours for a meal or buying their food from the commissary, in violation of the ADA, Eighth Amendment, and Fourteenth Amendment (Doc. 22, pp. 29-31);

**Count 15:**   Defendants IDOC, Bates, Bailey, Spiller, Godinez, Pinckneyville, and Lawrence have conspired to violate Plaintiff's rights under the Eighth and Fourteenth Amendments by feeding him a soy-based diet since April 19, 2013 (Doc. 22, pp. 31-33);

**Count 16:**   Defendants Hellmann and Eber conspired to retaliate against Plaintiff for reporting an alleged staff assault by referring to Plaintiff as a "snitch" in the presence of other inmates on his wing (which resulted in two assaults within twenty-four hours) and planting contraband in his cell on January 23, 2015 (which resulted in his placement in segregation), in violation of the First, Eighth, and Fourteenth Amendments (Doc. 22, pp. 33-35);

**Count 17:**   Correctional Officer Smith[3] intentionally "grabbed [Plaintiff's] buttock/cheek, squeezed, and stiffened his finger[s] so that it felt like it was going to go . . . into his anus" on January 21, 2015, in violation of the Eighth and Fourteenth Amendments (Doc. 22, pp. 36-38);

**Count 18:**   Same as Count X, but focused on conditions at Pinckneyville (Doc. 22, pp. 38-41);

**Count 19:**   Defendant Doe (eye doctor) charged Plaintiff for prescription eye glasses that were the wrong prescription, in violation of the ADA and Eighth Amendment (Doc. 22, pp. 22).

Plaintiff now seeks monetary damages and a prison transfer (Doc. 22, p. 43).

## Discussion

**A.   Claims Subject to Further Review**

The first amended complaint violates the Federal Rules of Civil Procedure and runs afoul of *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). Rather than dismiss the pleading with

---

[3] C/O Smith is not named as one of the defendants in the case caption or list of defendants in the first amended complaint. However, the pleading refers to him as such. It appears that the omission of his name was inadvertent.

instructions to amend it, however, the Court finds that the better approach is to allow Counts 13 and 16 to proceed in this action, and dismiss the rest.  Count 16, in particular, addresses claims that are more urgent than the rest, as will be addressed in more detail when discussing the TRO Motion.  Therefore, proceeding with Count 16 in this action will allow the Court to more efficiently and effectively address these , which are as follows:

> Count 13:   Defendant Eber prevented Plaintiff from speaking with his assigned wing officer on December 26, 2014, by yelling loudly at Plaintiff in a threatening manner, in violation of the First and Eighth Amendments (Doc. 22, pp. 28-29);
>
> Count 16:   Defendants Hellmann and Eber conspired to retaliate against Plaintiff by referring to him as a "snitch" in the presence of other inmates on his wing (which resulted in two assaults within twenty-four hours) and planting contraband in his cell on January 23, 2015 (which resulted in his placement in segregation), in violation of the First, Eighth, and Fourteenth Amendments (Doc. 22, pp. 33-35);

Plaintiff shall proceed with Counts 13 and 16 against Defendants Eber and Hellmann.  Based on his request for injunctive relief, Warden Spiller shall also remain in this action, but only in his official capacity.  For purposes of answering the first amended complaint, Defendants should refer to pages 28-29 and 33-35 of the first amended complaint; there, they will find the allegations offered in support of Counts 13 and 16.

**B.   Claims Subject to Dismissal**

All remaining claims shall be dismissed without prejudice, including Counts 1-12, 14-15, and 17-19.  Pursuant to Federal Rule of Civil Procedure 8, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" and also "a demand for the relief sought."  FED. R. CIV. P. 8(a).  Additionally, Rule 8(d) requires that each allegation within the complaint "must be simple, concise, and direct."  FED. R. CIV. P. 8(d)(1).  Rule 10 requires a plaintiff to "name all the parties."  FED. R. CIV. P. 10(a).  It also requires a litigant to

"state his claims in separate numbered paragraphs, 'each limited as far as practicable to a single set of circumstances,' and also requires that 'each claim founded on a separate transaction or occurrence' be 'stated in a separate count' if 'doing so would promote clarity.'" *See Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011); FED. R. CIV. P. 10(b).  These basic rules are meant to produce a complaint that "give[s] defendants fair notice of the claims against them and the grounds for supporting the claims." *Id*. (citing *Killingsworth v. HSBC Bank Nev., N.A.,* 507 F.3d 614, 618 (7th Cir. 2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Standing alone, the length of a complaint does not usually justify dismissal of the pleading.  However, unintelligibility and a lack of organization do.  *Stanard*, 658 F.3d at 797-98; *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Length may make a complaint unintelligible[ ] by scattering and concealing in a morass of irrelevancies the few allegations that matter.").  In its current form, Plaintiff's first amended complaint crosses the line from "unnecessarily long" to "unintelligible" at times.  *Stanard*, 658 F.3d at 798.  Even under the liberal pleading standards applicable to *pro se* prisoner cases, the pleading falls short.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009) (holding that the factual allegations of a *pro se* complaint are to be liberally construed).

To begin with, the first amended complaint does not properly identify the defendants in this action.  The list of defendants refers to nineteen separate defendants (Doc. 22, pp. 2-3).  However, the statement of claim refers to many others.  For this reason, it is not clear who Plaintiff intends to sue or, for that matter, who would respond to the allegations.[4]

---

[4] By way of example, the statement of claim clearly refers to C/O Smith as a defendant, but this individual's name is not included in the list of defendants.  Plaintiff also filed a motion seeking to include Defendant Hartman in the statement of claim, indicating that this individual was only mentioned in the list of defendants; however, Defendant Hartman is already included in both sections (Doc. 23).

Plaintiff divides the first amended complaint into nineteen "counts." The allegations offered in support of each count take the form of two- or three- page narratives. Within these narratives, Plaintiff raises multiple constitutional claims, federal statutory claims, and Illinois state law claims. Typically, each count includes two, and sometimes as many as five, separate claims. In other words, Plaintiff has asserted well over fifty separate claims in the pleading against at least nineteen defendants. Defendants would be hard-pressed to sort through and find in this "morass of irrelevancies the few allegations that matter" to them. *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003).

More to the point, many counts should have been filed as separate actions altogether because they address unrelated claims against different defendants at two separate institutions.[5] This method of pleading clearly runs afoul of *George v. Smith*, 507 F.3d 605 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. at 607 (citing 28 U.S.C. § 1915(b), (g)).

It would be difficult for Plaintiff to argue, for example, that his claim against Defendant Berry (a Lawrence official) for failing to provide Plaintiff with assistance in the gym (Count 1) is related to his complaints against high-ranking officials about a soy diet (Count 15). Likewise, it is difficult to imagine how Plaintiff's claim that Defendant Coe misdiagnosed his diabetes (Count 5) is related to his claim that Defendant Schidler threatened to flip him out of his

---

Plaintiff created a blank space for a defendant's name, complete with a description, but named no one, either in specific or general terms.

[5] Plaintiff attempts to draw a connection between the claims and defendants by suggesting that there was a large conspiracy to retaliate against him. However, the allegations in the first amended complaint do not suggest that there was a collective agreement between all of the defendants as a group or between groups from the two prisons.

wheelchair (Count 8), even if both incidents occurred at the same prison.  In many instances, a "count" could stand alone as a single lawsuit—because that count is unrelated to others in the pleading and also because it addresses multiple distinct claims against a particular defendant or group of defendants.

No doubt, Plaintiff is reluctant to file separate lawsuits to address his different claims.  To do so would certainly result in additional filing fees.  Plaintiff did not qualify to proceed *in forma pauperis* ("IFP") in this case because of his financial status.  Therefore, he is already obligated to pay the full filing fee of $400.00 for this action, regardless of its outcome.  If Plaintiff files separate lawsuits to address his unrelated claims, as *George* requires him to do, he will surely amass thousands of dollars in additional filing fees and/or potentially incur a third "strike."[6]

But that is his choice.  The Court simply cannot allow him to proceed with these unrelated claims against different defendants in a single action under *George*, even if he can cure the violations of Rules 8 and 10 noted in the operative pleading.  And, as presented, the Court cannot easily sever the claims. The events giving rise to Plaintiff's counts occurred at two different prisons.  However, it would not make sense to sever Plaintiff's counts along these lines for two reasons.  First, Plaintiff raises claims against defendants who are employed at the *same* prison that are also unrelated to one another (such as the example cited above).  Second, the allegations are vague as to time and place and therefore make severance, even into two categories (i.e., claims arising at Lawrence and claims arising at Pinckneyville) infeasible.

---

[6]  In 2008, Plaintiff was deemed to be a "3-striker" under the Prison Litigation Reform Act. However, this determination was made prior to the Seventh Circuit's decision in *Turley v. Gaetz*, 625 F.3d 1005 (7th Cir. 2010), which clarified that no strike is incurred when some, but not all, claims in an action are dismissed as being frivolous or for failure to state a claim.  In light of this decision, Plaintiff's strikes were re-evaluated.  At present, Plaintiff has incurred only two strikes.  *See Owens v. Douglas, et al.*, No. 13-cv-2303 (N.D. Ill., dismissed for failure to state a claim on May 23, 2013): *Labarbra v. Sheahan, et al.*, No. 03-cv-6410 (N.D. Ill., dismissed for failure to state a claim on Sept. 16, 2003).

Therefore, rather than sever unrelated claims into separate actions at this time, which would require Plaintiff to pay a separate filing fee and file an amended complaint in each, the Court will dismiss Counts 1-12, 14-15, and 17-19.

Because the events giving rise to this lawsuit occurred between December 2013 and the present, there is no apparent statute of limitations problem that would preclude dismissal, as opposed to severance, of the remaining counts. Furthermore, the Court has considered the dismissed counts only in the process of sorting out whether and how this case should proceed. Therefore, all remaining counts shall be dismissed without prejudice. If Plaintiff wishes to proceed on any of the dismissed claims, he must initiate a separate action(s) and pay the filing fee for that action, or attempt to secure pauper status.

### Filing Fee

Because Plaintiff's motion for leave to proceed *in forma pauperis* was denied, he is obligated to pay the full $400.00 filing fee for this action. To date, Plaintiff has forwarded $99.00 to the Court. The current deadline for paying the balance of $301.00 is March 12, 2015. Plaintiff is required to meet this deadline by remitting payment of $301.00 on or before that date, or by filing a motion seeking an extension of the deadline. **Failure to do so shall result in dismissal of this action.** *See* FED. R. CIV. P. 41.

### Pending Motions

**A.     Motion for Service of Process at Government Expense (Doc. 2)**

Plaintiff's motion for service of process at government expense (Doc. 2) is hereby **GRANTED in part**, as it relates to Defendants Eber, Hellmann, and Spiller (official capacity)**,** and **DENIED in part**, as it pertains to all other defendants.

**B.      Motions for Recruitment of Counsel (Docs. 10, 24)**

Plaintiff has filed two motions for recruitment of counsel (Docs. 10, 24), which shall be **REFERRED** to a United States Magistrate Judge for a decision.

**C.      Motion to Include Name (Doc. 24)**

Plaintiff's motion to include name (Doc. 24) is hereby **DENIED** as **MOOT**.

**D.      Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. 25)**

On February 27, 2015, Plaintiff filed a motion for a temporary restraining order and/or preliminary injunction ("TRO Motion") (Doc. 25).  The 29-page motion summarizes many of the "Counts" that are included in the first amended complaint (including numerous ones that are now subject to dismissal and present no pressing concern).  Because this action will focus only on Counts 13 and 16, all portions of the TRO Motion that are unrelated to Counts 13 and 16 shall be disregarded.  The following paragraphs focus on Counts 13 and/or 16:  Paragraphs 2, 10-11, 14, 17, and 19.

There, Plaintiff repeats many of the same allegations that were already offered in support of his earlier motion for a temporary restraining order and/or preliminary injunction (Doc. 11).  He claims that Defendants Eber and Hellmann called him a "snitch" in front of the other inmates on his wing on January 23, 2015 (Doc. 25, p. 5).  He was allegedly assaulted twice within twenty-four hours of this incident (Doc. 25, p. 6).  On January 24, 2015, Plaintiff was then moved to segregation for ninety days (after Defendants planted contraband in his cell and issued him a false disciplinary ticket) (Doc. 25, pp. 6, 8).  The Court denied Plaintiff's prior motion without prejudice on these facts, primarily because Plaintiff no longer lived in the same wing where the "snitch" incident and two assaults occurred (Doc. 14).

In the instant TRO Motion, Plaintiff adds that inmates housed in segregation have since learned of his label as a "snitch" (Doc. 25, p. 7). They have threatened him. Plaintiff worries that he may be attacked once he is released from segregation, while getting his medication, or in the event an enemy is later placed in his cell.

The Court finds that it would be inappropriate to issue a TRO under the circumstances presented. As previously explained, a TRO is an order issued without notice to the party to be enjoined that may last no more than fourteen days. *See* FED. R. CIV. P. 65(b)(2). A TRO may issue only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). Plaintiff remains in segregation at this time and is not scheduled for release from segregation until late April. By all indications, he lives alone in his cell. He does not claim to have a cellmate, or one that is threatening him. He also does not allege that those inmates who are threatening him in segregation are free to leave their cells at the same time that he is out of his cell. For these reasons, the Court finds that a TRO is unwarranted.

Whether a preliminary injunction is appropriate is a question that this Court will refer to a United States Magistrate Judge for further consideration, consistent with the instructions in the "Disposition."

E.  **Motion to Receive Filings Via U.S. Mail (Doc. 26)**

Plaintiff's motion to receive all filings by postal delivery, as opposed to electronic delivery, is hereby **DENIED**. This District and the IDOC have entered into an agreement to participate in the electronic filing program at certain facilities in the State of Illinois, including

Pinckneyville. As a general rule the District Clerk will mail paper copies of any document to a party only upon prepayment of the required fee. According to 28 U.S.C. § 1914(b), "[t]he clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States." The Judicial Conference Schedule of Fees § (4) provides that a fee of $.50 per page shall apply for reproducing any record or paper. Therefore, Plaintiff should submit any request for copies to the Clerk, in writing, along with prepayment of the required fee. Copies of the Court's docket sheet are available at a cost of $.50 per page. *See* 28 U.S.C. § 1914(b).

### Disposition

The Clerk is **DIRECTED** to **REINSTATE C/O EBER** as a defendant on the docketing sheet in CM/ECF.

**IT IS HEREBY ORDERED** that **COUNTS 1-12, 14-15,** and **17-19** are **DISMISSED** without prejudice to Plaintiff pursing these claims in a separately filed action(s) consistent with *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), and Federal Rules of Civil Procedure 8 and 10.

**IT IS FURTHER ORDERED** that Defendants **JOHN COE, C/O BERRY, C/O SCHIDLER, COUNSELOR HORTON, LT. RAY, COUNSELOR HARTMAN, C/O BAILEY, DOCTOR SHAH, WARDEN SPILLER (individual capacity), PINCKNEYVILLE CORRECTIONAL CENTER, C/O STOUT, CANTINI FOOD SERVICES, SALVADOR GODINEZ, SUZANN BAILEY, TY BATES, WEXFORD MEDICAL SERVICES, JOHN DOE, and C/O MYERS** are **DISMISSED** without prejudice.

**AS TO COUNTS 13** and **16**, the Clerk of Court shall prepare for **DEFENDANTS C/O MICHAEL HELLMANN, C/O EBER,** and **WARDEN SPILLER (official capacity)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6

(Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, including a decision

on the motions for recruitment of counsel (Docs. 10, 24).

In addition, it is hereby **ORDERED** that Plaintiff's motion for temporary restraining order or preliminary injunction (Doc. 25) is **DENIED in part**, with respect to the request for a temporary restraining order, and **REFERRED in part** to **United States Magistrate Judge Williams** for consideration of Plaintiff's request for a preliminary injunction as soon as practicable pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).  If it becomes apparent that further action is necessary, the undersigned judge should be notified immediately.  Any motions filed after the date of this Order that relate to this request for injunctive relief or seek leave to amend the first amended complaint are also hereby **REFERRED** to **United States Magistrate Judge Williams**.

Further, this entire matter shall be **REFERRED** to **United States Magistrate Judge Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his motion for IFP was denied.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 10, 2015**

 s/ MICHAEL J. REAGAN
**CHIEF JUDGE,
UNITED STATES DISTRICT COURT**