IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE OWENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-1421-MJR-SCW |
| | ) |
| CURTIS EBERS, | ) |
| MICHAEL HELLMAN, | ) |
| and THOMAS SPILLER, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### A. Introduction and Procedural Overview

Incarcerated at Pinckneyville Correctional Center, Tyrone Owens filed suit in this Court in December 2014 under 42 U.S.C. 1983, alleging numerous constitutional violations by a host of correctional officials in two separate institutions over a span of several years. The original complaint was not signed, and the Court directed Owens (Plaintiff) to file an amended complaint. On threshold review of Plaintiff's 81-page first amended complaint in March 2015, the undersigned found that two counts stated cognizable claims against three Defendants -- correctional officer Curtis Ebers, correctional officer Michael Hellman, and warden Thomas Spiller (the latter only in his official capacity, as to Owens' request for injunctive relief). The claims which survived were directed against Defendant Ebers under the First and Eighth Amendments (Count 13) and against Defendants Hellman and Ebers for violation of the First, Eighth, and Fourteenth Amendments (Count 16).

1 | P a g e

On September 4, 2015, Magistrate Judge Stephen C. Williams entered an Order (Doc. 82) ruling on 17 motions. Judge Williams found that two of those motions – which sought preliminary injunctive relief (Docs. 40, 56) – warranted further consideration and set them for hearing. Judge Williams conducted the evidentiary hearing on October 7, 2015 and November 12, 2015. Plaintiff appeared at the hearing and called five inmate witnesses (Juan Rosario, William Malone, Charles Davidson, Tavaris Johnson, and Devon Stewart). Defendants called Lieutenant Sean Furlow, Supervisor of Internal Affairs. Judge Williams then took the matter under advisement.

On January 21, 2016, he submitted a detailed Report and Recommendation (Doc. 133, "the Report"). The Report recommends that the undersigned deny Plaintiff's motions for preliminary injunction (Docs. 40 and 56) and deny a third motion for immediate injunctive relief filed by Plaintiff on November 24, 2015 (Doc. 120), while the matter was under advisement.[1] Plaintiff filed an "Objection to Magistrate Report and Recommendation" on January 29, 2016 (Doc. 134), and – as contemplated by Local Rule 73.1(b) of this District – Defendants responded to the objection on February 16, 2016 (Doc. 137).

Timely objections having been filed, the undersigned District Judge reviews *de novo* the portion of the Report to which Plaintiff specifically objected. **28 U.S.C.**

---

[1] Plaintiff also filed several "Notices" stating that he was in imminent danger. These were related to his pending *motions* for preliminary injunctive relief – seeking transfer out of Pinckneyville Correctional Center based on the belief that his life in in danger – so Judge Williams considered them and, to the extent they could be construed as motions, recommended the undersigned deny them.

636(b)(1); F̲ED̲. R. C̲IV̲. P. 72(b); S̲OUTHERN̲ D̲IST̲. OF̲ I̲LLINOIS̲ L̲OCAL̲ R̲ULE̲ 73.1(b). The undersigned can accept, reject, or modify Judge Williams' recommendations, receive further evidence, or recommit the matter to Judge Williams with instructions. *Id.* For the reasons stated below, the Court adopts Judge Williams' Report in its entirety. Analysis begins with the procedural standards governing analysis of Plaintiff's underlying motions for preliminary injunctive relief.

B.  Applicable Legal Standards

The purpose of a preliminary injunction is "to preserve the status quo until the merits of a case may be resolved." *Indiana Civil Liberties Union v. O'Bannon*, **259 F.3d 766, 770 (7th Cir. 2001),** *cert. denied*, **534 U.S. 1162 (2002).** A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** *Accord Winter v. Natural Res. Def. Council, Inc.*, **555 U.S. 7, 24 (2008).**

To obtain a preliminary injunction, a plaintiff must show (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm without the injunction, (3) that the harm he would suffer is greater than the harm a preliminary injunction would inflict on defendants, and (4) that the injunction is in the public interest. *Judge v. Quinn*, **612 F.3d 537, 546 (7th Cir. 2010),** *citing Winter*, **555 U.S. at 20.** The "considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted." *Judge*, **612 F.3d at 546.**

In the context of prisoner litigation, there are further restrictions on courts' remedial power. The scope of the court's authority to enter an injunction in the corrections context is circumscribed by the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e. *Westefer v. Neal*, **682 F.3d 679, 683 (7th Cir. 2012).** Under the PLRA, preliminary injunction relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. 3626(a)(2).** *See also Westefer*, **682 F.3d at 683 (Section 2626(a)(2) of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions -- prison officials have broad administrative and discretionary authority over the institutions they manage).**

C. <u>Analysis</u>

As noted above, two of Plaintiff's claims survived review under 28 U.S.C. 1915A. The threshold review Order (Doc. 28, p. 2) provided:

> What shall remain in this action are those claims involving Defendants Eber and Hellmann (Counts 13 and 16). Although buried in the pleading, Count 16 presents what appears to be the most pressing issue, as it arises from allegations that Defendants Hellmann and Eber recently called Plaintiff a "snitch" in order to endanger his safety. Count 13 involves a related claim that Defendant Eber used threats and intimidation to prevent Plaintiff from talking with his wing officer. The Court will exercise its inherent authority to manage its cases by allowing Plaintiff to proceed with Counts 13 and 16 against Defendants Eber and Hellmann in this action.[2]

---

[2] The amended complaint requested injunctive relief, so Warden Spiller also was left in as a Defendant, should any such relief be granted. Defendant "Eber" later was identified as Curtis Ebers (see Doc. 91).

In requesting preliminary injunctive relief, Plaintiff (a) asserts that the "snitch" label places him in severe danger of attack from fellow inmates and (b) seeks transfer out of Pinckneyville Correctional Center *to Dixon Correctional Center*. Judge Williams conducted a full evidentiary hearing over the course of two days, taking a lengthy break between the hearing dates so that Plaintiff (who claimed to have submitted affidavits from fellow prisoners backing his claim that he was in danger) could call those prisoners as live witnesses, as no such affidavits were located in the court file.

The undersigned has reviewed the transcripts of the hearing (Docs. 119, 128). Judge Williams' Report contains a comprehensive analysis of the witness testimony and documentary evidence adduced at the two-day hearing. The Court need not repeat that here. Judge Williams described all evidence presented by both sides. He concluded that, in general, Plaintiff (and much of the evidence he presented) was not credible, and: "It is clear that Plaintiff is prepared to say whatever is necessary to secure a transfer to Dixon Correctional Center" (Doc. 133, pp. 12-13). Judge Williams offered multiple examples to support this conclusion. For instance, Plaintiff claimed to have filed many affidavits from fellow inmates who heard threats made to Plaintiff, but the Court's extensive scouring of the record revealed only a single affidavit. And that document purported to be the affidavit of Wayne Jones but was signed by someone else, "Donald Carlyle" (Doc. 128, pp. 16-17).

More serious problems with Plaintiff's evidence existed. For instance, Plaintiff has maintained throughout this litigation that the trouble resulting from his snitch label started when Defendants Ebers and Hellman called Plaintiff a snitch in January 2015.

But the evidence before the Court flatly contradicts that and indicates that Plaintiff had a reputation as a snitch at Lawrence Correctional Center (where he was housed from July 2013 to September 2014) before he ever interacted with Ebers and Hellman at Pinckneyville. Indeed, one of Plaintiff's own witnesses testified that Plaintiff had been labeled a snitch while at Cook County Jail. Furthermore, as Judge Williams pointed out (Doc. 133, p. 13), many of Plaintiff's witnesses testified that the snitch label stemmed from Plaintiff going to Internal Affairs to report a staff sexual assault, *not to* Ebers and Hellman referring to Plaintiff as a snitch in front of other inmates in his housing wing.

Also, at the evidentiary hearing before Judge Williams, Plaintiff testified about an attack by his former cellmate, David Acosta – an attack Plaintiff attributed to his being identified as a snitch. But that allegation does not appear in any of the grievances Plaintiff filed about Acosta. Those grievances state that Plaintiff disliked Acosta. The testimony that Plaintiff was attacked by Acosta because of the snitch label also is contradicted by a pleading Plaintiff filed which says he got in a fight with Acosta after yelling at Acosta for putting his feet in Plaintiff's face.

Plaintiff stated that no one ever responded to his grievances about the Acosta incident, but records were produced which clearly contain responses from the grievance officer and counselor (Doc. 133, p. 13). And despite maintaining that he is in danger from the inmates who are calling him a snitch, Plaintiff could not or would not identify any inmate who did so. Plaintiff flatly refused to identify anyone who called him a snitch. Likewise, each of his witnesses refused to identify any inmate who called Plaintiff a snitch.

Additionally, during the October 7th evidentiary hearing, Judge Williams pointedly asked Plaintiff to identify specific occasions when he was threatened. Plaintiff refused to testify about specific dates and times of the threats. Judge Williams noted that "none of the threats state a certain time and place" for the attacks which Plaintiff believed to be imminent (Doc. 133, p. 3).

Judge Williams observed Plaintiff and other witnesses testify, personally questioned them, exhaustively examined the voluminous evidence, and found Plaintiff not credible. Judge Williams determined that inconsistencies and contradictions in Plaintiff's evidence suggest Plaintiff is attempting to use the January 2015 incident in which Ebers and Hellman referred to Plaintiff as a snitch as a means to secure a transfer he wants to Dixon Correctional Center (and Dixon Correctional Center alone).

The undersigned concurs with Judge Williams' statement that "Plaintiff's credibility goes to the issue of whether Plaintiff is actually at risk for irreparable harm if the injunction is not granted" (Doc. 133, p. 14). Judge Williams cited Seventh Circuit law for the proposition that an inmate's speculation that he is in danger (even an inmate, like Plaintiff, who has been in prior fights/altercations with other inmates) does not equate to a showing of imminent danger if that inmate is not transferred (Doc. 133, p. 14, *citing* **Baird v. Hodge, 605 F. App'x 568 (7th Cir. 2015)**). Judge Williams concluded that Plaintiff "has done nothing more than speculate that his reputation as a snitch puts him in danger of serious harm, [and] Given his credibility issues, this is hardly sufficient" to support issuance of a preliminary injunction.

Having freshly reviewed the evidence, the undersigned agrees with Judge Williams' finding that Plaintiff fell short of satisfying his burden to obtain a preliminary injunction mandating his transfer from Pinckneyville Correctional Center. Specifically, Judge Williams found that Plaintiff had not demonstrated a serious risk of irreparable harm (if the injunction is not issued) and had failed to show that he is likely to succeed on the merits of this claim.

In his objection to the Report, Plaintiff first reminds the Court that he proceeds *pro se,* and asks the Court to hold him to a less stringent standard that that applicable to represented litigants. However, that standard governs *pleadings* filed by pro se litigants, *see, e.g., Perez v. Fenoglio,* **792 F.3d 768, 776 (7th Cir. 2015) (complaints filed by pro se plaintiffs are held to a "less stringent standard than formal pleadings drafted by lawyers");** it does not relieve a pro se plaintiff from satisfying his burden of persuasion to obtain the extraordinary remedy of a preliminary injunction.

Plaintiff next reminds the undersigned that Plaintiff called witnesses and presented his own live testimony and exhibits to support his claim that his life is in danger due to being labeled a snitch. Plaintiff's evidence was that other inmates menacingly call him a snitch and make threats to him based on his being a snitch, and he should not have to wait for these threats to escalate into actual harm. But Plaintiff overlooks that Judge Williams found Plaintiff and most of his evidence not credible.

In his objection (Doc. 134, p. 3), Plaintiff also argues that he is likely to succeed on the merits of his claims, because "Defendants labeling him a snitch was wrong … [and] caused him several attacks already" including on January 27, 2016, when a fellow

inmate called Plaintiff a "snitch bitch" and said "if he gets moved out of the [segregation] cell, kill this snitch" (Doc. 134, p. 3). Of course, the January 27, 2016 incident had not occurred when Plaintiff filed the motions for preliminary injunction now before this Court, and no evidence regarding that incident was presented to Judge Williams. Plaintiff has the right to file a motion based on the January 27, 2016 incident, but it cannot be used as evidence to object to Judge Williams' January 21, 2016 Report.

And although a correctional officer identifying a prisoner as a "snitch" can be considered "wrong" and can have adverse consequences (indeed, that is part of one of the claims that has been allowed to proceed in this case – Count 16), what is before the Court is not the question of whether Defendants' conduct violated Plaintiff's constitutional rights. The question is whether Plaintiff has shown that he is entitled to a preliminary injunction now, i.e., whether the evidence warrants an order requiring that Plaintiff be transferred out of Pinckneyville *before this case can be resolved*. That is where Plaintiff's proof falls short. [3]

"To obtain a preliminary injunction, a party must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that issuing an injunction is in the public interest." ***Grace Schools v. Burwell*, 801 F.3d 788, 795 (7th**

---

[3] Although not relevant to Plaintiff's Objection to the Report, it bears note that Internal Affairs did try to transfer Plaintiff out of Pinckneyville (based on several factors, including an incident with an inmate named Calvin Merritte, a history of disciplinary reports, and the allegation of staff sexual assault), but the request was denied by the Transfer Coordinator's Office. *See 10/7/15 Hearing Transcript,* Doc. 119, pp. 98-102.

**Cir. 2015)**, *citing Smith v. Executive Dir. of Ind. War Memorials Comm'n*, **742 F.3d 282, 286 (7th Cir. 2014). Here,** Plaintiff did not show that he was likely to suffer irreparable harm in the absence of *preliminary* relief. He has not demonstrated that without a preliminary injunction, he will suffer harm that cannot possibly be rectified by prevailing in this case (winning a final judgment in his favor). *See Illinois League of Advocates for the Developmentally Disabled v. Illinois Dept. of Human Services,* **803 F.3d 872, 876 (7th Cir. 2015).**

As in *Baird,* **605 F. App'x at 570,** where the Court of Appeals affirmed the denial of a prisoner plaintiff's request for a preliminary injunction compelling his transfer to a different correctional institution, here (on the record before this Court) the possibility of irreparable harm to Plaintiff during the pendency of this suit is too speculative to support issuance of a preliminary injunction.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.,* **796 F.3d 656, 661 (7th Cir. 2015).** The undersigned concludes that – on the ample evidence in the record – Plaintiff has not satisfied his threshold showing that "absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution." *Id.*

D. <u>Conclusion</u>

The Court overrules Plaintiff's objection (Doc. 134), **ADOPTS in its entirety** Judge Williams' January 21, 2016 Report and Recommendation (Doc. 133), and **DENIES** Plaintiff's motions/requests for preliminary injunctive relief (Docs. 40, 56, 120).

Still pending before Judge Williams are Plaintiff's motion for recruitment of counsel (Doc. 99) and motion to compel discovery responses by Defendants (Doc. 127).

IT IS SO ORDERED.

DATED February 22, 2016.

<u>s/ Michael J. Reagan</u>
Michael J. Reagan
United States District Judge