# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE OWENS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14-cv-1421-SCW |
| ) | |
| CURTIS EBERS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Plaintiff Tyrone Owens, an inmate incarcerated a Pinckneyville Correctional Center ("Pinckneyville"), brought the present lawsuit pursuant to 42 U.S.C. § 1983. Plaintiff Owens alleges his civil rights were violated when Defendant Curtis Ebers prevented him from discussing a commissary issue with another officer and when Defendant Ebers and Defendant Michael Hellman labeled him a "snitch" in front of other inmates. This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 162). Plaintiff has filed a response, and the motion is ripe for disposition. For the reasons stated below, the Motion for Summary Judgment (Doc. 162) is **GRANTED in part and DENIED in part**.

## FACTUAL BACKGROUND

In reviewing the facts set forth by the parties in their briefs, the Court views the facts in the light most favorable to Plaintiff and draws all reasonable inferences in his favor. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012)**. The facts viewed as such are as follows: At all times relevant to this matter, Plaintiff was an inmate at the Illinois Department of Corrections and was housed at Pinckneyville Correctional Center. ("Pinckneyville"). On December 26, 2014, while Plaintiff was in the medication line in the core area for the B Wing of the prison, Plaintiff remembered that he wanted to speak to his officer about a commissary purchase. (Doc. 163-1, p. 49 – 51). During this time, Defendant Ebers, an officer for C Wing, came over to Plaintiff and started yelling at him, using threats and intimidation to prevent Plaintiff from talking to the other officer. (*Id.*). Ebers was in Plaintiff's face, and Plaintiff thought that Defendant Ebers was getting ready to throw Plaintiff from his wheelchair. (Doc. 175-1, p. 15). Plaintiff Owens believes that Ebers yelled at him on this occasion as retaliation for Plaintiff filing grievances and lawsuits; however, he cannot specifically point to an incident that would have led to Ebers retaliating against him. (Doc. 163-1, p. 65 - 66). Plaintiff does not know when he filed the last grievance before the December 26th incident. (*Id.* at 66).

On January 23, 2015, Plaintiff was housed on 2B, Cell 18. He was housed there with three cellmates. (*Id.* at 19). On the same date, Plaintiff went to Internal Affairs ("IA") to report an incident involving an alleged sexual assault against him involving an officer. (Doc. 128, p. 19; Doc. 175-1, p. 4 - 5). He was brought there by Defendants Hellman, who as another guard, and Ebers. (Doc. 175-1, p. 29 – 30). According to both

Plaintiff Owens and another inmate, William Malone, when Defendant Hellman arrived at Plaintiff's cell, Hellman referred to Plaintiff as a "snitch" for other inmates to hear. (Doc. 175-1, p. 4 – 5; Doc. 119, p. 19). According to Plaintiff, Defendant Hellman loudly told Plaintiff "You're going to operations." (Doc. 175-1, p. 4). While Plaintiff did not hear Defendant Ebers call Plaintiff a "snitch," he testified that other inmates told him that Ebers called him a "snitch." (*Id.* at 8 – 9).

Inmate Malone testified that the statement regarding "going to operations" meant that Plaintiff was a snitch and would be understood by other inmates as such. (Doc. 119, p. 19). Defendant Hellman then stated "here's your snitch on B wing." (Doc. 175-1, p. 5). According to Plaintiff, he was not labeled a "snitch" in Pinckneyville prior to Defendant Hellman's statement. (*Id.* at 19). Defendant Hellman admitted he was aware of the sexual assault allegations against the other officer from "talk between employees." (Doc. 175-4, p. 2 – 3). He also testified that it is possible that an inmate who is known as a "snitch" is in danger of being beat up or assaulted. (*Id.* at 4).

Upon returning to his cell, someone slapped Plaintiff in the back of the head, on his ear. (Doc. 163-1, p. 42 – 43). Plaintiff does not know who slapped him, however. (*Id.* at 41). Plaintiff believes he was slapped because he was labeled a snitch but does not know who slapped him or why. (*Id.* at 40, 42). He believes he was slapped because he was thought of as a snitch because he had never been slapped before. (*Id.* at 43).

On the same day, Plaintiff was also called a "snitch" by his cellmate, Melvin Bankhed. (*Id.* at 36). Since Bankhed called Plaintiff a snitch, Plaintiff refused to go to the healthcare unit ("HCU") with Bankhed, and went on his own. (*Id.*). When Plaintiff

3

left the cell, Bankhed rushed over to Plaintiff and said "I have no problem beating your bitch ass, snitch bitch." (*Id.* at 37). Inmate Malone also testified that he heard Bankhed make the same statement. (Doc. 119, p. 23 – 24). Bankhed did not physically touch Plaintiff, however. (Doc. 163-1, p. 39). After this incident, Plaintiff went to segregation because he did not want to be attacked by Bankhed. (Doc. 128, p. 23). Plaintiff eventually went to 3 or 4 House and was not attacked by anyone there. (Doc. 163-1, p. 44).

Prior to January 23, 2015, Plaintiff had been referred to by others as a rapist, which increased his need for safety. (*Id.* at 21). Also prior to January 23, 2015, Plaintiff requested a transfer out of Pinckneyville for multiple reasons, including that he feared for his safety due to being referred to as a rapist. (Doc. 175-1, p. 2). According to Plaintiff, another inmate informed him that before January 23, 2015, when Plaintiff was in Cook County Jail, he was attacked by other detainees because they thought he was a "snitch."[1] (*Id.* at 22).

According to Plaintiff, after January 23, 2015, Plaintiff was told by another inmate that he would be attacked in the shower. (Doc. 128, p. 25). In addition, Plaintiff claims that when he was in segregation, some men walked by and said "that's that snitch bitch right there," and "We'll get you when you get out of seg." (*Id.* at 28). In addition,

---

[1] Defendants cite the proposition that witnesses at a preliminary injunction hearing in November 2015 testified that Plaintiff had been referred to as a snitch before January 23, 2015, and that Plaintiff had a reputation as a snitch before ever encountering Defendants Ebers and Hellman. (Doc. 175, p. 3). Plaintiff denies the record supports this proposition, however. Defendants cite only to the complete transcript of the injunction hearing, without references to individual witnesses or page numbers. The complete transcript of the entire hearing is nearly 200 pages long (*See* Docs. 119, 128). If Defendants want the Court to consider a particular proposed fact, they should cite to *specific* portions of the record supporting that fact. "Judges are not like pigs, hunting for truffles buried in the record," ***Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010)**. The Court does not consider this asserted fact set forth by Defendants.

Plaintiff was the recipient of a letter from an inmate Calvin Meritte. (Doc. 128, p. 56 – 57). Inmate Merritte received a disciplinary report as a result of the letter.[2] (*Id.* at 57). Plaintiff testified that he also received one to two threats a week from other inmates in segregation stating that they were going to "get" Plaintiff. (Doc. 128, p. 44). Another inmate, Juan Rosario, testified that he heard that Owens was a "snitch," and that Plaintiff would get assaulted. (Doc. 119, p. 5). Other inmates have also testified that they heard Plaintiff referred to as a "snitch." (*See* Doc. 119, p. 49; Doc. 175-5, p. 3 – 4). Lieutenant Furlow, from Internal Affairs, conducted an investigation into Plaintiff's allegations that a staff member and other inmates had called him a snitch, but could not substantiate the allegations. (Doc. 128, p. 77).

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**. The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. A genuine issue of

---

[2] The parties dispute the contents of the letter; however, other than testimony from an internal affairs officer indicating simply that Meritte was disciplined for the letter, none of the citations provided by the parties direct the Court to any discussion in the record regarding the letter, much less information in the record regarding its contents. **The Court relies on the parties for accurate citations to the record in order to most effectively decide a summary judgment motion.**

5

material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**. *Accord Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, **699 F.3d at 994;** *Righi v. SMC Corp.*, **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

## ANALYSIS

**1. December 26, 2014 Incident in Medication Line**

Count 13 of Plaintiff's Complaint alleges that Defendant Ebers violated Plaintiff's First and Eighth Amendment rights when Ebers yelled at Plaintiff in the medication line, and thus prevented Plaintiff from addressing a commissary issue with another officer. Plaintiff cannot recover on these claims as a matter of law, however. The Court first addresses the First Amendment Claim.

Plaintiff's claim under the First Amendment is premised on the notion of unlawful retaliation. To prevail on such a claim, Plaintiff Owens must show that (1) he engaged in activity protected by the first amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment

6

activity was at least a motivating factor in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009)**. Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive. *Zimmerman v. Tribble*, **226 F.3d 568, 573 (7th Cir. 2000)**. In a First Amendment case, the burden of proof is split between the parties. *Mays v. Springborn*, **719 F.3d 631, 634 (7th Cir. 2013)** (**citing** *Mt. Healthy Board of Education v. Doyle*, **429 U.S. 274 (1977))**. First, Plaintiff must show that defendant's conduct was sufficient to cause the injury, that is, that the protected First Amendment conduct was a motivating factor for taking the retaliatory action. *Id.* **at 635.** The burden then shifts to defendant to rebut by showing that the action would have occurred anyway, regardless of the improper motive. *Id.* That inquiry is a question of fact. *Ustrak v. Fairman*, **781 F.2d 573, 578 (7th Cir. 1986).**

The record before the Court, even viewed in Plaintiff's favor, does not establish liability for retaliation in violation of the First Amendment against Defendant Ebers. No jury could reasonably find that protected First Amendment conduct was the motivating factor for Ebers in yelling at Plaintiff. The fact that Plaintiff filed lawsuits and grievances prior to the December 26th encounter with Ebers is not itself sufficient to demonstrate retaliatory motive by Ebers. It is not clear from the record that any of the prior grievances or lawsuits were directed at Ebers, or that he even knew about them. Plaintiff also could not recall the last time he filed a grievance or suit prior to the December 26th encounter. It is clear that Plaintiff is merely speculating when he states his belief that Defendant Ebers' actions on December 26th were in retaliation for filing a

7

grievance or lawsuit, and ultimately indicated he is not sure of the specific basis for Ebers' actions. If a jury were to find that those actions were based on Plaintiff's grievances or suits, it too would be speculating. Therefore, summary judgment is appropriate as to Plaintiff's First Amendment claims in Count 13.

Plaintiff also raises Eighth Amendment claims against Ebers in Count 13. The Eighth Amendment prohibits "cruel and unusual punishments." **U.S. CONST. amend. VIII**. Verbal harassment, however, is generally "not what comes to mind when one thinks of 'cruel and unusual' punishment." *Dobbey v. Ill. Dept. of Corrections*, **574 F.3d 443, 446 (7th Cir. 2009);** *see also Dewalt v. Carter*, **224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.")**. It is true that the Eighth Amendment can be violated where serious verbal harassment is accompanied by physical conduct, or where the defendant's harassment places the inmate in danger of physical harm, such as a potential assault by other prisoners. *See Beal v. Foster*, **803 F.3d 356, 358, 59 (7th Cir. Oct. 2, 2015)**. The record fails to reveal facts that raise Defendant Ebers' actions to a level that would allow Planitiff to recover under the Eighth Amendment, however. Though Ebers was "in Plaintiff's face," and Plaintiff thought Ebers would throw him out of his wheelchair, there is no evidence that Ebers made any actual physical contact with Plaintiff. Rather, Plaintiff was the subject of merely verbal harassment. Additionally, there is no evidence in the record to suggest that Ebers' harassment placed Plaintiff in danger in any way. The Court has no doubt that the harassment was

8

unpleasant for Plaintiff, and was, perhaps, inappropriate; however, the Court cannot say, from this record, that it rose to the level of being unconstitutional. Summary judgment is also appropriate as to Plaintiff's Eighth Amendment claims in Count 13.

**2. Plaintiff Labeled as a "Snitch"**

Plaintiff's claims against Hellman and Ebers under the First and Eighth Amendments in Count 16 shall go forward as they relate to Plaintiff's allegations that those defendants called him a "snitch." The Court first addresses Defendants' argument that there is no evidence that Defendant Ebers called Plaintiff a "snitch." It is true that Plaintiff testified that he did not hear Ebers call him a "snitch." He also testified, however, that other inmates told him that Ebers called him a "snitch." This testimony by Plaintiff regarding what other inmates told him constitutes inadmissible hearsay under the rules of evidence. *See* **FED.R.EVID. 801, 802**. Defendants did not object to the consideration of this testimony, however. Rather, Defendants did not address the testimony at all, and simply argued that there was no evidence that Ebers called Plaintiff a "snitch." Since there was no objection by Defendants, the Court must consider Plaintiff's testimony that other inmates told him that he was called a "snitch" by Ebers.

The Court now turns to Plaintiff's First Amendment retaliation claim. By being tasked with escorting Plaintiff to Internal Affairs, and by calling Plaintiff a "snitch," a jury could reasonably infer that the Defendants knew, at a minimum, that Plaintiff was going to Internal Affairs to discuss allegations against another prison guard. Hellman also testified that he was aware of the sexual assault allegations Plaintiff levied against

another guard. Though it is not clear from the record when Defendant Hellman was aware of these allegations, it is not unreasonable to infer that Hellman knew when he was taking Plaintiff to Internal Affairs.

Defendant Hellman also testified that he was aware that an inmate who was labeled a "snitch" was possibly at risk of being assaulted. As another guard, it is not unreasonable to infer that Defendant Ebers also had such knowledge regarding the risk to an inmate labeled a "snitch." Putting these inferences together, a jury could reasonably infer that Defendants, knowing the reason that they were taking Plaintiff to Internal Affairs, called Plaintiff a "snitch" for other inmates to hear, in retaliation for Plaintiff raising complaints of sexual assault against another guard, knowing that calling Plaintiff a "snitch" could place him in danger. Defendants have not argued that they would have called Plaintiff a "snitch" regardless of any retaliatory motive, and such an issue is a question of fact anyway. Therefore, Plaintiff's First Amendment retaliation claims in Count 16 shall go forward.

Plaintiff's Eighth Amendment claim in Count 16 is a closer call. To prove a claim brought under the Eighth Amendment requires a two-part showing. First, the inmate must demonstrate he was subject to a deprivation that was objectively, sufficiently serious so that an official's act or omission resulted in the denial of the minimal civilized nature of life's necessities. ***Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008)**. Second, the prison official must be "deliberately indifferent" to a serious risk of harm to the inmate. ***Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009)**. "Deliberate indifference" constitutes a state of mind more blameworthy than mere negligence.

*Farmer v. Brennan*, **511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)**. The test for deliberate indifference is a subjective one, where, to be held liable, a prison official

> must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* **at 837**. In other words, to be deliberately indifferent, a prison official must have actual knowledge of the substantial risk of serious harm. It is not enough that the official should have drawn the inference of the risk but failed to do so. *Id.* **at 838**.

The Court has no problem finding that Defendants actions could satisfy the subjective prong of the test, for calling Plaintiff a "snitch," knowing the risk the label carries with it, demonstrates deliberate indifference to a serious risk of harm to Plaintiff. The real issue, however, is whether Plaintiff was subject to a sufficiently serious deprivation, when the only physical harm he suffered was a slap on the back of the head. The Court looks to two recent, unpublished cases from the Seventh Circuit for guidance. In *Wright v. Miller,* the inmate-plaintiff requested protective custody due to his homosexual orientation and status as an ex-Latin King gang member. **561 Fed.Appx. 551, 553 (7th Cir. 2014)**. The inmate's counselor agreed that Latin King gang members would stab the inmate for being homosexual. *Id.* Nonetheless, the counselor recommended that the inmate be placed back in general population, which resulted in the inmate being so placed. *Id.* The inmate remained in general population for a very short period of time, and was removed when he again requested protective custody after being threatened. *Id.* **at 553 – 54**. Though the inmate was never physically

harmed, the Seventh Circuit found that he had stated an Eighth Amendment claim against his counselor. The Court found that the counselor made his recommendation while knowing that the inmate would live in fear and get stabbed. *Id.* **at 555.** The Court held that "[e]ven without an actual injury, the mere probability of the harm to which [the counselor] exposed [the inmate] can be sufficient to create liability." *Id.* It held that where a prison official deliberately or with reckless indifference, inflicts a "'heightened risk of future injury'" on an inmate, such conduct "'is itself actionable.'" *Id.* **(quoting *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013))**.

In *Jones v. Butler*, on the other hand, the Seventh Circuit found that an unharmed inmate failed to state an Eighth Amendment claim. **663 Fed.Appx. 468 (7th Cir. 2016)**. The inmate had sought, and was denied, protection from other inmates and guards at Menard Correctional Center. *Id.* **at 469**. He alleged that his safety had been threatened by inmates and guards, and that he was slapped, kicked, and called a "snitch" by guards during a shakedown. *Id.* Those guards were not defendants to the suit, however. *Id.* The Seventh Circuit, noting that none of the threats to his safety had been followed through on, affirmed the dismissal of the inmate's claims. *Id.* **at 470**. It held that "[a]bsent cognizable harm, Jones does not have a claim for damages, for 'it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment.'" *Id.* **(quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)**.

The Court finds *Wright* and *Jones* to create a grey area in which the case at bar falls. Plaintiff Owens' claims are more analogous to *Wright*, however, and summary

12

judgment is not appropriate. As with the counselor in *Wright*, here, a jury could find that by labeling Plaintiff a "snitch" in front of other inmates, the defendants exposed Plaintiff to a high probability of harm. The Seventh Circuit found such a heightened risk of harm itself to be actionable. *Jones* is distinguishable in that the defendants there did not actually create the risk of harm that the inmate was placed into; rather, they ignored the risk of harm, and since the inmate was not physically harmed, there was no cause of action. Here, not only did Hellman and Ebers ignore the risk of harm resulting from an inmate being labeled a "snitch," but they actually created the risk itself by labeling Plaintiff as such. This set of circumstances therefore places this suit within the *Wright* framework rather than under *Jones*.

Count 16 also raises claims under the Fourteenth Amendment. The Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." **U.S. CONST. amend. XIV, § 1**. In order for a prisoner to recover on a claim challenging the process afforded in a prison, the facts must demonstrate (1) constitutionally deficient procedural due process, and (2) a resulting deprivation of a liberty or property interest caused by the defendants. ***Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007)**. As to the second factor, Placement in segregation implicates a liberty interest when the conditions of segregation impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." ***Sandin v. Connor*, 515 U.S. 472, 485 (1995)**. In determining whether a liberty interest is implicated, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured." ***Hardaway v. Meyerhoff*, 734**

F.3d 740, 743 (7th Cir. 2013) (quoting *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) ("*Marion I*")) (emphasis in original) (internal quotations omitted).

Defendants argue that Plaintiff cannot demonstrate the deprivation of a liberty interest. The Court agrees, as there is no evidence in the record presented to the Court regarding the condition of Plaintiff's segregation. Based on the record presented, no jury could find that Plaintiff suffered an atypical and significant hardship as a result of his segregation after being labeled a "snitch." To the extent that Plaintiff's claims for being labeled a "snitch" raise a Fourteenth Amendment claim in Count 16, summary judgment is appropriate.

Count 16 also included claims relating to the alleged placement of contraband by Defendants Hellman and Ebers. Defendants did not raise those claims in their motion, and those claims shall go forward.

Finally, the Court must address the issue of qualified immunity, as it was raised by Defendants. The doctrine of qualified immunity shields public officials from civil liability so long as their conduct does not violate a clearly established right. *Gill v. City of Milwaukee*, 850 F.3d 335, 340 (7th Cir. 2017). In determining whether a public official is entitled to qualified immunity, courts consider two questions: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.* (quoting *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2016)) (internal quotations omitted). Defendants' qualified immunity argument

conflates the two prongs.  Defendants simply point to their arguments on the merits.  The Court, however, has determined that a jury could find that Defendants have violated some of Plaintiff's rights, and Defendants have made no real argument as to why the specific rights were not clearly established at the time of the violations.  Defendants are therefore not entitled to qualified immunity.

## CONCLUSION

For the reasons already discussed, Defendants' Motion for Summary Judgment (Doc. 162) is **GRANTED in part and DENIED in part**.  All of Plaintiff's claims in Count 13, against Defendant Ebers, are **DISMISSED with prejudice,** and Count 13 is **DISMISSED with prejudice** in its entirety.  Plaintiff's Fourteenth Amendment claims in Count 16, as they relate to being labeled a "snitch," are **DISMISSED with prejudice.** All other claims in Count 16 shall go forward.  The Clerk of Court is **DIRECTED** to enter judgment at the close of the case.

**IT IS SO ORDERED**.
DATED: 9/28/2017

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge